*Decision will be entered under Rule 50.*

AMERICAN COAST LINE, INC. (IN LIQUIDATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 446. Promulgated January 15, 1946.

*Howe P. Cochran, Esq., Margaret F. Luers, Esq.,* and *Paul L. Clugston, Esq.,* for the petitioner.

*Sidney B. Gumbill, Esq.,* and *Z. N. Diamond, Esq.,* for the respondent.

## OPINION.

MURDOCK, *Judge*: The excess profits tax here in question (subchapter E) was first imposed by section 710 (a) of the Internal Revenue Code. See section 201, Second Revenue Act of 1940. It was imposed "for each taxable year beginning after December 31, 1939." The petitioner is endeavoring to show that it had a fiscal year beginning prior to December 31, 1939, and ending on June 30, 1940. It would thus avoid most, if not all, excess profits tax liability,

since it operated only seven days after June 30, 1940. It requested permission to file its tax reports upon a fiscal year basis. Permission was granted effective June 30, 1940, but the petitioner never took advantage of that permission. The reason is clear. The permission was upon condition that it file a return for the calendar year 1939 and a return for the short period January 1, to June 30, 1940. That latter period would be a period beginning after December 31, 1939, and would be subject to the excess profits tax of section 710 (a). The petitioner never obtained permission to file a tax return for a fiscal year beginning prior to December 31, 1939, and ending on June 30, 1940. Obviously, what the petitioner wanted was permission to file a return for a period from the beginning of its operations in 1939 and ending on June 30, 1940. Its application was made on May 2, 1940. That request was not timely under the Commissioner's regulations (see Regulations 103, sec. 19.46–1), and the Commissioner acted reasonably and within his regulations in granting the request effective June 30, 1940, and upon the conditions which he imposed. Furthermore, and this in itself is determinative, the petitioner never filed a tax return for a period beginning prior to December 31, 1939, and ending thereafter, but, instead, filed its excess profits tax return for the calendar year 1940 in accordance with the period for which it closed its books. Thus, it does not have a leg to stand on in opposing the Commissioner's determination of its excess profits tax liability on the basis of the calendar year 1940. Since the deficiency determined by the Commissioner is not otherwise attacked, it must be approved.

The next contention of the petitioner is that it is entitled to relief under section 722. The Commissioner contends that the proceeding should be dismissed in so far as it seeks relief under section 722. He cites *Uni-Term Stevedoring Co.*, 3 T. C. 917, and *Pioneer Parachute Co.*, 4 T. C. 27. Solution of this question requires consideration of the legislative history of section 722 (d) (formerly (e)) and of section 732 of the code. Section 732 is the section which expressly confers jurisdiction on this Court (formerly the Board of Tax Appeals) over issues relating to relief under section 722. The principal purpose of section 722 (d) has been to fix a period of limitations within which claims for relief must be made, but it may also have conferred upon this Court jurisdiction in certain cases not covered by section 732. Therefore, the two sections should be considered together.

The original subchapter E excess profits tax provisions came into the Internal Revenue Code through section 201 of the Second Revenue Act of 1940. The only reference to the Board of Tax Appeals was in section 722, which was as follows:

SEC. 722. ADJUSTMENT OF ABNORMALITIES IN INCOME AND CAPITAL BY THE COMMISSIONER.

For the purposes of this subchapter, the Commissioner shall also have authority to make such adjustments as may be necessary to adjust abnormalities affecting income or capital, and his decision shall be subject to review by the United States Board of Tax Appeals.

There was no elaboration to show how the relief system was to work. Those provisions were in effect until March 7, 1941, at which time the Excess Profits Tax Amendments of 1941 replaced the original with a wholly new section 722. Those amendments were made effective as of the date of the enactment of the Excess Profits Tax Act of 1940. The only reference to the Board of Tax Appeals in the new section 722 occurred in paragraph (e) thereof. That provision fixed a period of limitations within which applications for relief had to be made. It first required the taxpayer to compute its tax and file its excess profits tax return without the application of section 722, and then provided a general rule that the benefits of the section could not be obtained unless the taxpayer applied to the Commissioner for those benefits within six months from the date of filing the return. An exception was provided to this general rule allowing a taxpayer to claim the benefits of the section in its petition to the Board of Tax Appeals if the Commissioner mailed a notice of deficiency without having issued a preliminary notice thereof or if he mailed a notice of deficiency within 90 days after the date of his preliminary notice. One important purpose of the exception was that a taxpayer who asked for no relief from the tax shown on its return had to be given some time within which to make an application for relief after it had been notified that a deficiency was going to be or had been determined. But where the application was thus filed and was not filed within six months after the date for filing the return, the benefits of the section were limited to the amount of the deficiency.

Section 722 was further amended by section 222 of the Revenue Act of 1942, approved October 21, 1942. The only change material here. aside from changing the provisions from paragraph (e) to paragraph (d), was the additional requirement that the taxpayer "pay" its excess profits tax computed without the application of section 722.

That new paragraph (d) was further amended by Public Law 201, 78th Cong., ch. 346, 1st sess., approved Dec. 17, 1943. It entirely changed the period for filing applications or claims for relief and was made applicable with respect to taxable years beginning after December 31, 1939. That part of it material hereto was as follows:

(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710 (a) (5). The benefits of this section shall not be allowed unless the taxpayer within the

period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary.

Section 322 is the general section authorizing refunds and credits "where there has been an overpayment of any tax." The period of limitation for the filing of claims for refund fixed in that section is within three years from the time the return was filed or within two years from the time the tax was paid, whichever period expires later.

The principal purpose of section 722 (d), as shown by its legislative history, was to provide a reasonable period of limitations within which applications or claims for relief under section 722 had to be made. The period was extended from time to time, and, finally, when it included a two-year period after payment of the tax, there was no necessity for any reference to petitions to the Board of Tax Appeals, and, consequently, all reference to the Board or to the Tax Court was eliminated.

The Excess Profits Tax Amendments of 1941, referred to earlier, added to the code for the first time section 732, entitled "Review of Abnormalities by Board of Tax Appeals." It parallels, to a degree, section 272, which conferred jurisdiction in deficiency cases but not in 722 cases. *Uni-Term Stevedoring Co., supra.* Section 732 expressly conferred jurisdiction on this tribunal in certain cases under section 722. Paragraph (a) thereof provides, *inter alia:* "If a claim for refund of tax under this subchapter for any taxable year is disallowed in whole or in part by the Commissioner" he shall send a notice thereof by registered mail and the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the excess profits tax. That amendment likewise was made effective as of the date of the enactment of the Excess Profits Tax Act of 1940. No changes material hereto have been made in those provisions.

The petition herein was filed on December 26, 1942, which was prior to Public Law 201, approved December 17, 1943, the last amendment of section 722 (d). However, that amendment was expressly made applicable to taxable years beginning after December 31, 1939. The year here involved is such a taxable year, the calendar year 1940. Section 722 (d) as thus amended makes no reference to the Board of Tax Appeals or to the Tax Court, and the only subchapter E excess profits tax provisions conferring jurisdiction upon this Court in 722 cases are contained in section 732. Those provisions, standing alone, do not give this Court jurisdiction over the 722 issue in this proceeding. Prerequisites to such jurisdiction are computation and payment of the excess profits tax without reference to section 722, the filing of a claim for refund of that tax, in accordance with section 322, and a

proper notice of the rejection in whole or in part of that claim. The petitioner has never paid any excess profits tax for the year here in question. It has never filed any claim for refund of excess profits taxes paid for the year, and it has never been notified by the Commissioner of his denial in whole or in part of any claim for refund of excess profits taxes for that year. Thus, the Tax Court, under the law as it now exists, does not have jurisdiction to consider the question of whether or not the petitioner is entitled to relief under section 722. There is no hardship in this. It simply treats all taxpayers alike. Cf. *Pioneer Parachute Co., supra.* If the petitioner pays the deficiency, it will then be entitled to file a claim for refund, and if that claim is denied in whole or in part, it will have a right to contest that action of the Commissioner in this Court, but at present the section 722 issue is not within the statute giving this Court jurisdiction.

The provisions of section 732 at the time this petition was filed were, so far as they are material hereto, exactly the same as they are now. However, it might be argued that section 722 (d), as it existed at the time this petition was filed, conferred jurisdiction upon this Court in certain cases not covered by section 732, and jurisdiction thus acquired was never taken away or lost. There is a general rule which may be found in 15 C. J. 825 that jurisdiction over pending cases is ousted by the repeal of the statute upon which it wholly depends unless the repealing act contains a clause saving pending actions from the operation of the repeal or contains a substantial reenactment of the provisions under which the action was brought. Mr. Chief Justice Waite, in *Railroad Co.* v. *Grant*, 98 U. S. 398, expressed the rule as follows: "It is equally well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law." Congress apparently had this rule in mind when it enacted section 283 (a) of the Revenue Act of 1926, in which it expressly continued the jurisdiction of the Board of Tax Appeals over cases filed with it prior to the enactment of the Revenue Act of 1926. The amendment to section 722 (d) contained in Public Law 201, *supra*, was an effective repeal of section 722 (d) as it existed at the time the petition in this case was filed. The new law provided that "section 722 (d) of the Internal Revenue Code (prescribing the time for filing applications for general relief under the excess-profits tax) is amended to read as follows," and the amendment was a wholly new provision, complete in itself. It was expressly made effective for all years for which the subchapter E excess profits tax was imposed. It completely superseded the old paragraph (d). There was no need for the amendment to contain any provisions saving the jurisdiction which the Board of Tax Appeals or the Tax Court might have obtained by reason of petitions having been filed with it under the former

provisions of the paragraph and it did not contain any saving clause. It would follow that if this Court ever had section 722 jurisdiction in this case, it has been lost. Cf. *Pioneer Pc, achute Co., supra*, in which a similar argument was advanced.

However, this petitioner has never brought itself within the provisions of section 722 (d) as they existed at the time its petition was filed. It had made a claim to the Commissioner for relief under section 722 before it ever filed its petition. No suggestion is made that that claim was not timely. Thus, the petitioner did not have to rely, and did not rely, upon the exception contained in section 722 (d). Furthermore, there is nothing to indicate that the notice of deficiency was mailed without a preliminary notice having been mailed or that it was mailed within 90 days after the date of a preliminary notice. Thus, if the provisions of section 722 (d), in effect at the time this petition was filed, were intended by Congress to give the Tax Court jurisdiction in certain cases not covered by section 732, nevertheless, this petition does not come within those provisions of the law. We had no jurisdiction of the section 722 issue under section 272. *Uni-Term Stevedoring Co., supra*. It follows that the Tax Court never acquired any jurisdiction over the section 722 issue in this proceeding.

Reviewed by the Court.

> *Decision will be entered for the respondent as to the deficiency, and the proceeding is dismissed as to the section 722 issue for lack of jurisdiction.*

BLACK, *J.*, concurs only in the result.

---

OPPER, *J.*, dissenting: From its inception, the Board of Tax Appeals has acquired jurisdiction upon application of a taxpayer to review a deficiency. I. R. C., sec. 272. The purpose was to avoid requiring payment of exactions which were not authorized by law. The method of reviewing a denial by the Commissioner of relief for abnormalities under section 722 was, at least under the earlier versions of the law, manifestly intended to follow this traditional procedure.

It was recognized, however, that in some cases computation (and payment) [1] of the tax without reference to the relief provision, as was required by the 1941 and 1942 amendments, would involve situations where the only effective redress might be in connection with a claim for refund. To add jurisdiction to review the Commissioner's action in such situations, section 732 was enacted.[2] Even then, however, "there

---

[1] This requirement, added by the 1942 Act, seems to have been a mere clarification, for by that act "The administrative procedure presently provided for in section 722 is retained." H. Rept. No. 2333, 77th Cong., 2d sess., pp. 148, 149.

[2] "Sec. 9. * * * Under existing law, unless a deficiency has been determined by the Commissioner, a taxpayer has no right of appeal to the Board (sec. 272 (a) (1), I. R .C.). Thus, for example, if a refund claim were filed by a taxpayer and the Commissioner dis-

are some cases in which it would be inequitable to compel the taxpayer to pay the entire amount of such tax * * *. Thus at the time required for payment, an eligible taxpayer need pay only 67 percent of that portion of the tax on which it claims relief * * *. Any determination of tax greater than the total amount paid will produce a deficiency."[3] Section 710, as so amended (Revenue Act of 1942, sec. 222 (b)), clinches this approach by providing:

* * * For the purposes of section 271, if the tax payable is the tax so reduced, the tax so reduced shall be considered the amount shown on the return.

Section 271 is the definition of a deficiency, from a determination of which by the Commissioner an appeal lies to the Tax Court under section 272.

The only reference in the 1941 and 1942 provisions of section 722 to the Board of Tax Appeals is not an authorization to review a determination of the Commissioner, which was unnecessary in view of section 729, but (sec. 722 (d) (1), (2)) is an authorization to accept and act *de novo* upon claims for relief which because of the exceptional circumstances described arose in such a way that the taxpayer did not have opportunity to file his claim first with the Commissioner.[4]

---

allowed the claim in whole or in part *but did not determine* [a] *deficiency,* no right of review of the Commissioner's action by the Board would be present. Inasmuch as the taxpayer's right to relief under certain of the relief provisions provided in this bill may only be raised by a claim for refund, it is necessary that a procedure be provided whereby the Board may obtain jurisdiction to review a decision by the Commissioner disallowing such claims. Accordingly, section 732 (added to the Excess Profits Tax Act of 1940 by sec. 9 of the bill) provides that the taxpayer may file a petition with the Board of Tax Appeals within 90 days after notice of such disallowance is mailed for redetermination of the excess-profits tax. * * *" S. Rept. No. 75, 77th Cong., 1st sess., pp. 15–16. [Emphasis added.]

[3] Op. cit.. footnote 1, *supra.*

[4] "SEC. 722. * * *

"(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—The taxpayer shall compute its tax, file its return, and pay its tax under this subchapter without the application of this section, except as provided in section 710 (a) (5). The benefits of this section shall not be allowed unless the taxpayer, not later than six months after the date prescribed by law for the filing of its return, or if the application relates to a taxable year beginning after December 31, 1939, but not beginning after December 31, 1941, within six months after the date of the enactment of the Revenue Act of 1942, makes application therefor in accordance with regulations to be prescribed by the Commissioner with the approval of the Secretary, except that if the Commissioner in the case of any taxpayer with respect to the tax liability of any taxable year—

"(1) issues a preliminary notice proposing a deficiency in the tax imposed by this subchapter such taxpayer may, within ninety days after the date of such notice make such application, or

"(2) mails a notice of deficiency (A) without having previously issued a preliminary notice thereof or (B) within ninety days after the date of such preliminary notice, such taxpayer may claim the benefits of this section in its petition to the Board or in an amended petition in accordance with the rules of the Board.

"If the application is not filed within six months after the date prescribed by law for the filing of the return, or if the application relates to a taxable year beginning after December 31, 1939, but not beginning after December 31, 1941, within six months after the date of the enactment of the Revenue Act of 1942, the operation of this section shall not reduce the tax otherwise determined under this subchapter by an amount in excess of the amount of the deficiency finally determined under this subchapter without the application of this section. * * *"

If it were not intended that taxpayers could secure a review in advance of payment of the deficiency, this provision was unnecessary and illogical. Any other conclusion results in the further absurdity that a taxpayer who had not had time to file his claim with the Commissioner could litigate his 722 question along with any deficiency issues before the Board and obtain more adequate relief than a taxpayer who had filed his claim but whose claim had not secured favorable treatment. The latter would have to pay the deficiency, and claim a refund. I am entirely unwilling to ascribe so inconsistent and inequitable a purpose to the legislation.

The change to the present procedure, requiring the Commissioner to pass on all claims as a prerequisite to jurisdiction here, has been assumed to be the result of Public Law No. 201, approved December 17, 1943, long after this petition was filed. *Uni-Term Stevedoring Co.*, 3 T. C. 917; *Pioneer Parachute Co.*, 4 T. C. 27. For present purposes I am willing to accept that position, and the conclusions there reached as sound.

It seems to me to follow from what has been said, however, that when this proceeding was commenced, the Tax Court had jurisdiction of it, at least under the law as it stood under the 1941 and 1942 amendments. That is a distinction from the *Uni-Term* case, as I think the Tax Court recognized in *Pioneer Parachute Co.*

The latter case seems to me clearly distinguishable because that was not a petition to review a determination of the Commissioner at all, but an attempt to secure relief *de novo* under the exceptional situation covered in the 1941 and 1942 amendments.[5] The opinion there pointed out that by the 1943 amendment Congress recognized "that this Court is not equipped to handle claims for relief administratively," with a consequent change of—

\* \* \* the statute to its present form by Public Law 201, *supra.* \* \* \*
\* \* \* *so that in no case shall the question of possible relief under 722 be tried before this Court until after the Commissioner has acted adversely upon the claim.* [Emphasis added.]

In the present proceeding this taxpayer made its application under section 722 to the Commissioner; it was denied; deficiency notice was issued; the petition claiming relief from both actions was filed here, all at the time that the law permitted such procedure. Unless there are impeccable reasons for assuming that the jurisdiction acquired at that time was withdrawn, I think every consideration of justice and sound administration requires that it be considered as having been retained.

It may well be that the passage of Public Law No. 201 repealed, at least by implication, the provision for direct application to the Tax

---

[5] See footnote 4, *supra.*

Court which had previously been incorporated in section 722 (d). But it did not repeal section 729 or section 272, and is silent on the subject of withdrawal of jurisdiction in such a proceeding as this. At most it prescribed a new procedure. Quoting another statement from Corpus Juris:

> * * * jurisdiction duly acquired under an existing statute is not taken away by a subsequent statute prescribing a different method of commencing an action. [21 Corp. Jur. Sec., p. 148.]

In the words of Judge Parker in *Duke Power Co.* v. *South Carolina Tax Commission* (C. C. A., 4th Cir.), 81 Fed. (2d) 513, 516; certiorari denied, 298 U. S. 669:

> * * * a repealing act ought not be construed, if any other construction is possible, as intended to affect rights which have vested under the act repealed or *as requiring the abatement of actions instituted for the enforcement of such rights.* * * * [Emphasis added.]

I respectfully dissent.

ARUNDELL, *J.*, agrees with this dissent.