## POHATCONG HOSIERY MILLS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9230.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 2, 1946.

Decided May 23, 1947.

As Amended July 24, 1947.

Truman Henson, of New York City (Roy G. Peterson, of New York City, on the brief), for petitioner.

Harry Marselli, Tax Division, Dept. of Justice, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen.), and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

In this petition for review of the decision of the Tax Court we are met with a problem in the administrative procedure for obtaining excess profits tax relief under Section 722 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 722.

The issue is whether (1) payment of any part of the petitioner's excess profits tax and (2) denial in whole or in part by the Commissioner of a claim for refund or credit under Section 722, are prerequisites to the jurisdiction of the Tax Court to determine petitioner's right to relief under Section 722.

The facts, which are not in dispute, are as follows:

Petitioner filed its excess profits tax return for the calendar year 1942, computing its tax without the application of Section 722. In the return it reported its excess profits net income as $206,334.07, its excess profits credit based on invested capital as $73,428.16, and its unused excess profits credit adjustment as $142,794.08. Since the credits exceeded the excess profits net income, the return showed no excess profits tax due, and none was paid.

On September 4, 1943, the petitioner filed, on Form 991, an application for relief under Section 722, covering the years 1940, 1941 and 1942. Subsequently, the Commissioner notified the petitioner that he proposed to determine a deficiency of $88,642.23 in excess profits tax for 1942, based upon an increase in petitioner's excess profits tax net income and decreases in petitioner's credits. On July 20, 1944, petitioner filed, on Form 991, an amended application for relief, in the same amount as the proposed deficiency, under Section 722 covering the tax year 1942. After numerous conferences between petitioner's and Commissioner's representatives, the Commissioner, on August 29, 1945, mailed a notice of deficiency in excess profits taxes for 1942 in the amount of $88,642.23. In this deficiency notice, the Commissioner said:

"You have filed Forms 991, Application for Relief under Section 722 of the Internal Revenue Code, one on September 4, 1943, covering the years 1940, 1941 and 1942, and one, amended on July 20, 1944, covering the year 1942. *Since these appli-cations do not constitute claims for refund, no excess profits tax having been paid for any of the aforementioned years, this letter is not a notice of disallowance under Section 732 of the Internal Revenue Code.* However, consideration has been given to your contentions relative to reconstruction under Section 722 of your base period income for excess profits credit purposes, *and it has been determined* that you have not established that the tax computed under subchapter E of Chapter 2 of the Internal Revenue Code, without the benefit of Section 722 of the Code, results in an excessive and discriminatory tax within the provisions of Section 722(a) and (b) of the Code, and that you have not established what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during the excess profits tax taxable years ended December 31, 1940, December 31, 1941, and December 31, 1942." (Emphasis supplied)

From this deficiency determination, a petition was made to the Tax Court on November 21, 1945. In two general assignments, the petition alleged error in determining the deficiency; nine other assignments were directed toward the Commissioner's failure to grant relief under Section 722. Thereafter, the Tax Court granted a motion by the Commissioner to dismiss the proceeding for lack of jurisdiction insofar as it related to petitioner's application for relief under Section 722 on the ground that no excess profits tax had been paid by petitioner in 1942, and its application for relief had not been denied; it did so expressly upon the authority of its decisions in American Coast Line, Inc., v. Commissioner, 6 T.C. 67 (No. 10), since affirmed 2 Cir., 1947, 159 F.2d 665; Uni-Term Stevedoring Co., Inc., 3 T.C. 917; and Pioneer Parachute Co., Inc., 4 T.C. 27.

Following the answer of the Commissioner, the petitioner amended its petition before the Tax Court to clearly reflect that no issue other than relief under Section 722 was intended to be raised. Thereupon, pointing out that the pleadings as they then stood raised no issue as to any adjustments

made by the Commissioner in determining the excess profits tax deficiency and that the only errors assigned related to the failure of the Commissioner to grant relief under Section 722, the Tax Court entered its order sustaining the deficiency determined by the Commissioner.

As is immediately apparent, we are not here concerned with the merits of petitioner's claim for relief under Section 722; we are concerned with the procedure for the realization of such relief.

Petitioner takes the position that the Tax Court is required to pass upon its right to. Section 722 relief before it determines whether any proposed deficiency exists, for under Section 729(a)[1] of the Internal Revenue Code, 26. U.S.C.A. Int.Rev.Code, § 729(a), Sections 271 and 272 are applicable. Briefly, these sections grant a taxpayer the right to petition the Tax Court for a redetermination of any deficiency determined by the Commissioner before payment thereof, and define a deficiency as the amount by which the tax imposed exceeds the amount shown as the tax on the taxpayer's return.

Moreover, it is contended that the "tax shown on its return" was "paid" since its return showed no excess profits tax due, and that the Commissioner has disallowed petitioner's claim for relief. Accordingly, petitioner asserts that the Tax Court had jurisdiction to redetermine the deficiency in its excess profits tax for the year 1942, and should have considered petitioner's right to relief under Section 722.

The Commissioner's position is that the excess profits tax structure contemplates the determination and payment of petitioner's "normal" excess profits tax, with the proviso that petitioner may obtain the benefits of Section 722, an "abnormality" provision designed to alleviate the tax burden in hardship cases, only by way of a claim for refund or credit. The Commissioner further contends that the Tax Court may consider a taxpayer's right to relief under Section 722 only after the taxpayer has paid the excess profits tax due and filed a claim for refund, and that claim has been disallowed in whole or in part by the Commissioner.

■■ Before continuing, a word may be said as to the scope of our review. We, of course, credit the Tax Court's decision great weight and persuasiveness, particularly since we are dealing with a matter affecting procedure before the Tax Court itself, although it has not favored us with a full length picture of its views; for those, we are relegated to its prior decisions. Nevertheless, we think we have here a pure question of law and the enforcement of a rule of general applicability. Crane v. Commissioner, 67 S.Ct. 1047. It is not otherwise contended by the Commissioner.[2]

The answer to the dispute herein rests within the Internal Revenue Code.[3] Turning to the Code, we find the excess profits tax imposed in the sections commencing with Section 710. Section 721 is an "abnormalities" provision intended to afford relief from excess profits taxes by excluding from income in the current taxable year items of net abnormal income attributable to other taxable years. A taxpayer may take advantage of Section 721 by proper adjustment in the excess profits tax return filed, or by making no adjustment in the return, but thereafter filing a claim for refund, the denial of which may be reviewed by the Tax Court.[4]

---

[1] This section reads:

"Section 729. Laws Applicable.

"(a) General Rule. All provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1, shall insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by this subchapter."

[2] The Commissioner does not make the same assertion here as in Ceco Steel Products Corp. v. Commissioner, 8 Cir., 1945, 150 F.2d 698, which may be distinguished on its facts.

[3] The Excess Profits Tax (subchapter E of Chapter 2, 26 U.S.C.A. Int.Rev.Code, § 710 et seq.) was added to the Internal Revenue Code by Section 201 of the Second Revenue Act of October 8, 1940, 54 Stat. 975, entitled "Excess Profits Tax Act of 1940". As will appear, insofar as it is here material, that Act was amended by the Excess Profits Tax Amendments of 1941, 55 Stat. 17; the Revenue Act of 1942, 56 Stat. 798; and the Excess Profits Tax Amendments of 1943, 57 Stat. 601.

[4] See reference to Section 732, footnote 5.

Section 722, on the other hand, affords relief from excessive or discriminatory excess profits taxes resulting from abnormally low excess profits credit. The method of obtaining that relief is specifically stated in the margin.[5]

It is immediately apparent that Section 722 relief, except as not pertinent here[6] is not available to the taxpayer in the first instance, for he may not take advantage of that section in his excess profits tax return.

Careful examination of the statute exposes the error in the critical assumption of petitioner's argument that the total excess profits tax due cannot be found without deciding to what extent it is affected by Section 722. The answer must be, as the Commissioner asserts, that except in instances already mentioned, the extent of excess profits tax liability is determined separately and independently of the considerations contained in Section 722. Having saddled the taxpayer with a tax that undoubtedly could choke off its wind, Congress, reminiscent of sovereign gracious clemency, granted relief under specified conditions. This approach is consistent with American Coast Line, Inc., v. Commissioner, 2 Cir., 159 F.2d 665, at page 668, wherein the Court said, "This argument might perhaps be persuasive, if the denial of 'benefits' under § 722 were regarded as a constituent factor of the tax itself, as for example are the conditions detailed in § 721. We do not so regard § 722; on the contrary it was a favor; it presupposed that, even after taking into account the ameliatory conditions of § 721, the tax was due unless ex gratia the blow was softened; it was a tempering of the wind to the shorn lamb." Although the Court there was primarily concerned with Section 722 as it was amended by the Revenue Act of 1942, 56 Stat. 798, 914, we think it applies equally as well now.

Viewing the legislation in this light, it is not difficult to follow the reasoning of the Commissioner, that the essential characteristic of an application for relief is that it is a claim for refund or credit. The statutory requirements that the excess profits tax due be determined without reference to Section 722, the tax thus shown on the return be paid, and the relief be made available only upon application, are wholly consistent with that conclusion.

The evolution of Section 722(d) affords additional basis for the determination of the Tax Court, as it is explained in Uni-Term Stevedoring Co., supra, Pioneer Parachute Co., supra, and American Coast Line, Inc., supra.

Originally,[7] Section 722 briefly provided, "For the purposes of this subchapter, the Commissioner shall also have authority to make such adjustments as may be necessary to adjust abnormalities affecting in-

---

[5] Section 722(d). "Application for relief under this section. The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710(a) (5). The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. * * *" Section 722(d) as amended by Section 1(a), Excess Profits Tax Amendments of 1943, 57 Stat. 601, 26 U.S.C.A. Int.Rev.Acts, page 417.

Pursuant to Section 732(a), the notice of disallowance by the Commissioner of a claim for refund relating to certain parts of Section 711, or to Sections 721 or 722, may operate as a notice of deficiency; hence the Tax Court may review the disallowance; under Section 732(c) the Tax Court's review is final, but under Section 732(d), the determination by any division of the Tax Court of any question arising under Section 721(a) (2) (C) or Section 722, is reviewable by a special division of the Tax Court, and its decision is final.

[6] Thus, pursuant to Section 710(a) (5), under certain conditions taxpayer may file his application for relief at the time the excess profits tax return is filed and withhold 33% of the claimed reduction. See Regulations 112, 35.710-5 and 35.722-5(a).

Also, pursuant to the last sentence in Section 722(d), relief may be had by using in the excess profits tax return the credit based upon the constructive average base period net income as finally determined. See Regulations 112, 35.722-5(d) as amended by T.D. 5393, 1944 Cum.Bull. 415.

[7] Second Revenue Act of October 8, 1940, 54 Stat. 974, 986, 26 U.S.C.A. Int.Rev. Acts, page 35.

come or capital, and his decision shall be subject to review by the United States Board of Tax Appeals." But this was merely a stop-gap provision, and not intended as the last word on the subject.[8] Even under this statute the Commissioner had promulgated regulations requiring the taxpayer to compute and pay its excess profits tax without regard to the Section, and to file an application therefor.[9]

The procedure for obtaining relief was first fully provided, when Section 722 was enlarged, and subsection (e) was added by the Excess Profits Tax Amendments of 1941.[10] This amendment required a taxpayer to compute its tax and file its return without the application of Section 722.[11]

Accordingly, the taxpayer was required to apply to the Commissioner for the "benefits" of the section within six months from the statutory date for the filing of returns. However, if the Commissioner issued a preliminary notice of deficiency in excess profits tax, the taxpayer had ninety days to apply to the Commissioner for the relief; or, if the Commissioner mailed a final notice of deficiency without having mailed a preliminary notice or within ninety days after the preliminary notice, the taxpayer could claim the benefits of Section 722 in his petition (or in an amended petition) before the then Board of Tax Appeals.[12]

In the same amending Act,[13] Section 732 was added providing, if there were a disallowance in whole or in part of a "claim for refund" of tax under that subchapter, the Commissioner must send a notice to the taxpayer of such disallowance; within ninety days thereafter the taxpayer could file a petition with the then Board of Tax Appeals for a redetermination of the tax; if that petition was filed, the notice of disallowance was deemed to be a notice of deficiency.[14] The Board was also granted broad authority to determine a deficiency under this procedure and its review of Section 722 issues was made final.

---

[8] H.Rep.No.3002, 78th Cong., 3rd Sess., p. 52, 1940-2 Cum.Bull. 548, 557; Bulletin on Section 722, U.S. Treasury Department, Bureau of Internal Revenue (November, 1944) p. 1 (463A CCH Standard Excess Profits Tax Reporter, § 5145.-02).

[9] See Regulations 109, Section 30.722-1, as originally issued.

[10] March 7, 1941, Section 6, 55 Stat. 17, 23, 26 U.S.C.A. Int.Rev.Acts, page 84.

[11] The reason for this provision is significant: "It is deemed advisable in the interests of good administration, in view of the nature of the problem presented by section 722, that the taxpayer should not be permitted to apply the section in the computation of the excess-profits tax liability shown upon its return and that the taxpayer should be required to conform to reasonable restrictions with respect to the time within which it may make application for the benefits of the section." H.Rep.No.146, 77th Cong. 1st Sess., p. 13, 1941-1 Cum.Bull. pages 550, 559.

[12] But if the application was not filed within the six months period, the relief granted could not exceed the amount of the deficiency.

[13] Section 9, Excess Profits Tax Amendments of 1941, 55 Stat. 26, 26 U.S.C.A. Int.Rev.Acts, page 86.

[14] Under Section 722 as originally enacted, it was not apparent that an appeal to the Board of Tax Appeals could be had unless the Commissioner issued a deficiency letter, upon which the jurisdiction of the Board might be premised. See H. Rep.No.146, 1941-1 Cum.Bull., at page 560: "Under existing law, unless a deficiency has been determined by the Commissioner, a taxpayer has no right of appeal to the Board (section 272(a) (1), I.R. C.) Thus, for example, if a refund claim were filed by a taxpayer and the Commissioner disallowed the claim in whole or in part but did not determine deficiency, no right of review of the Commissioner's action by the Board would be present. Inasmuch as the taxpayer's right to relief under certain of the relief provisions provided in this bill may only be raised by a claim for refund, it is necessary that a procedure be provided whereby the Board may obtain jurisdiction to review a decision by the Commissioner disallowing such claims."

In Uni-Term Stevedoring Co., 3 T.C. 917, at page 918, n. 1, the Tax Court said, "It has been suggested that the only purpose of Section 732(a) was to permit review by this Court in cases where no deficiency had been determined in excess profits tax. No support is found for this either in the legislative history or in the provisions of the statute. The latter indicate a realization by Congress that a notice might be mailed under 732(a) even though the Commissioner had also determined a deficiency and mailed a notice under 729(a)."

Moreover, the Commissioner adopted regulations which considered the application for relief required by the amended statute as "a claim for refund or credit with respect to the excess profits tax for the taxable year paid at or prior to the time such application is filed."[15]

By Section 222(a) of the Revenue Act of 1942, 56 Stat. 914, subsection (e) of Section 722 was redesignated subsection (d). While the general procedure for obtaining relief was retained, the new provision, aside from extending the time limitations, required the taxpayer not merely to compute its tax and file its return, but also *to pay its tax* under the subchapter without the application of Section 722, except, of course, as provided in Section 710(a) (5).[16] Section 222(c) of the 1942 Act also amended Section 732, with the addition of subdivision (d) thereto, to provide that determinations and redeterminations by any division of the Board involving any question arising under Section 722, or another section not pertinent here, shall be reviewed by a special division, whose determination is not subject to review by the Board.[17]

It was pursuant to this amendatory statute that the Court in American Coast Line, Inc., v. Commissioner, supra, held that payment of the excess profits tax was a necessary condition to review by the Tax Court of matters pertaining to Section 722. Thus, relief under Section 722 was accorded what fully amounts to the status of a claim for refund.

The next legislative step in the development of Section 722(d), was taken in Section 1(a) of the Excess Profits Tax Amendments of December 17, 1943, 57 Stat. 601, wherein Section 722(d) was modified to read as already noted.[18] This amendment was made applicable retroactive to taxable years beginning after December 31, 1939.[19]

The most significant feature of this amendment was the repeal of those provisions permitting the taxpayer to by-pass the Commissioner and to make his application for Section 722 relief by way of petition directly to the Tax Court. Thus, Congress "wholly assimilated the situation to a claim for refund." American Coast Line, Inc., v. Commissioner, supra, 159 F. 2d at page 668. Even under the prior statutory arrangement, the specific permission to petition the Tax Court for relief in the first instance would not have been necessary unless Congress had already considered Section 722 relief available only by a claim for refund; for, the Commissioner's defi-

---

[15] Regulations 109, Section 30.722-5(e), as added by T.D. 5045, 1941-1 Cum.Bull. 69, 101. (Later amended by T.D. 5153, 1942 Cum.Bull. 145).

[16] To conform to the statute and to Joint Resolution of March 31, 1943, 57 Stat. 56, 26 U.S.C.A. Int.Rev.Acts, page 384, the regulations quoted above and cited in footnote 15, were amended by T.D. 5264, 1943 Cum.Bull. 761, and superceded by Regulations 112, Section 35.722-5. The first sentence is as given in the text; the Regulations continued: "The amount of credit or refund claimed shall be the excess of the amount of the excess profits tax for the taxable year paid over the amount of excess profits tax claimed to be payable computed pursuant to the provisions of section 722. In case the taxpayer elects to pay in installments the tax shown upon its return and at the time the application is filed such tax had not been paid in full, the taxpayer should file a claim for refund on Form 843 as promptly as possible after such tax has been paid in full. The information already submitted in the application need not again be submitted on Form 843 if reference is made therein to such application. For limitations upon refunds and credits generally, see section 322. As to procedure upon disallowance of a claim for refund of an excess profits tax which is claimed to be excessive and discriminatory under section 722, see section 732." Regulations 112, Section 35.722-5(c). (Subsequently this was amended by T.D. 5393, 1944 Cum.Bull. 415, 422).

[17] " * * * Because of the complicated nature and the economic character of the issues involving relief under section 722. * * * Only by this method can a consistent and uniform application of the principles established be assured in all cases." S.Rep.No.1631, 77 Cong., 2nd Sess., 1942-2 Cum.Bull. 504, 655; compare H.Rep. No. 2333, 77th Cong., 1st Sess., 1942-2 Cum.Bull. 372, 482.

[18] See footnote 5. Regulations 109, Section 30.722-5(a) and Regulations 112, Section 35.722-5(a) were amended to conform by T.D. 5393, 1944 Cum.Bull. 415.

[19] It may be noted that petitioner here raises no question relating to retroactive statutes. On this issue, see Pioneer Parachute Co., Inc., v. Commissioner, 4 T.C. 27.

ciency determination otherwise would have been sufficient to carry the whole matter to the Tax Court as with other sections of the subchapter relating to the excess profits tax.

It may be noted that on the assumption that Congress did not intend to by-pass the Commissioner, and with a view toward affording the fullest consideration to the complex claims based on Section 722, the Commissioner has set up an intra-departmental method of processing such claims by establishing a field division and an "Excess Profits Tax Council". Bulletin on Section 722 (November, 1944), 463A CCH § 5145. Support for this assumption may be found in subsection (g) of Section 722, added by Section 206 of the Revenue Act of 1943, 58 Stat. 21, 55, providing for publication of relief allowed by the Commissioner or the Tax Court, and "In the case of relief allowed by The Tax Court of the United States, the Commissioner shall also set forth the data previously reported under this subsection with respect to relief previously allowed in such case by the Commissioner." We may assume that this was another step to assure a "consistent and uniform application of the principles" in Section 722.[20]

The difficulty with petitioner's exegesis of the relevant statutes lies in the assumption that the relief accorded under Section 722 may be treated in the manner of a deduction or credit which could or should have been taken on the excess profits tax return. But we think it apparent, from our review, that in cases like the present, the rebate was intended to be made available by a claim for refund, over which the Tax Court would have had no jurisdiction except by virtue of Section 732.

The policy of treating Section 722 relief as a claim for refund further presupposes a payment. The Commissioner has so dealt with the matter in his regulations. Significantly, these regulations have remained constant, in treating the application under Section 722 as a claim for refund, throughout the legislative changes referred to herein. See Commissioner v. Munter, 67 S.Ct. 1175, footnote 6.

Petitioner, however, urges upon the Court the thought that the statute merely requires payment of the "tax shown on its return" in contra-distinction to the prior requirement to "pay its tax", and suggests that since the return filed disclosed no tax due, it has "paid" the tax shown. Accordingly, it is argued, the Commissioner erred in refusing to consider its application as a claim for refund and the notice of deficiency, as quoted above, amounts to a disallowance of the claim; hence, the jurisdictional prerequisites were met.

The obstacle in the path of that conclusion is the fact that petitioner puts itself in the anomalous position of requesting a refund or credit for money which it never paid. Section 722 relief is afforded by way of "recapture," so to speak, and presupposes something paid. This is particularly true in the instant case, since, as has already been pointed out, Section 722 may not be considered by a taxpayer on its excess profits tax return, except as noted. Accordingly, there is nothing to refund to petitioner, nor anything for which it may be credited. Therefore, we fully agree with the Tax Court that "until some (excess profits) tax is paid, there is no basis for relief," and on the basis of what has already been said, it is apparent that "the relief is not affected through reduction of a deficiency in the excess profits tax." Uni-Term Stevedoring Co., Inc., v. Commissioner, supra, 3 T.C. at page 919.

Finally, petitioner voices the fear that on such construction as we have given the law, the Commissioner would be in a position to assert the finality of the proceeding with respect to the deficiency determination against a subsequent contest with respect to the claim for refund. Of course this would be true if petitioner's view, that the claim for refund may be asserted upon a deficiency determination, were controlling. But as this case stands, the claim for relief may not be asserted at that time; for this reason alone the petitioner would not be precluded from asserting its claim if and when the Commissioner rejects it. The Tax Court so ruled in the Uni-Term case, and the Commissioner disavows any con-

---

[20] See note 17.

trary thought. Moreover, Section 729(a) makes other provisions of the law applicable only insofar as they are not inconsistent with the excess profits tax subchapter. Thus, the Commissioner cannot take the position that, the notice of disallowance being the equivalent of a notice of deficiency, one notice of deficiency in excess profits tax under Section 272(a) has already been mailed and Section 272(f) prohibits another notice of deficiency where the taxpayer filed a petition with the Tax Court based on the existing notice. Section 732 (a) expressly requires the Commissioner to send a notice of disallowance of the claim for refund to the taxpayer, and the taxpayer may appeal to the Tax Court on the basis of that notice. Accordingly, Section 272(f) would be inconsistent with the excess profits tax subchapter if the notice of disallowance may be said to be a notice of deficiency for by hypothesis that section must be read in the light of the specific relief provisions provided for realization of the benefits of Section 722.

Petitioner also asserts that, having paid the deficiency pursuant to Section 1145, it could not recover such overpayment in view of Section 322(c),[21] but whatever plausibility exists in that argument, it fails to take into account Section 322(c) (1).

On this score, a nice point is made in the Tax Court's decision in the Uni-Term case, 3 T.C. at page 921, note 7, where attention is called to the fact that jurisdiction to review the Commissioner's disallowance of a claim under Section 722 is exclusively in the Tax Court, but, for other excess profits tax purposes, the taxpayer has the alternative of suing for refund in a District Court or the Court of Claims. Thus, liability for the excess profits tax in the first instance being without consideration of Section 722, if the argument of finality were effective to prevent the application of the procedure under Sections 722 and 732, then a taxpayer could not take ad-

vantage of a suit for refund in such other courts lest it abandon its claim under Section 722. The procedural views of the Tax Court preserve those alternative rights with respect to other provisions of the excess profits tax.

For the reasons stated the order of the Tax Court is affirmed.

---

[21] "(c) Effect of petition to Board. If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272(a) and if the taxpayer files a petition with the Board of Tax Appeals within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the

Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except—

(1) As to overpayments determined by a decision of the Board which has become final; * * *"