RUUD MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11544. Promulgated January 7, 1948.

*Walter W. McVay, Esq.*, for the petitioner.
*A. W. Dickinson, Esq.*, and *Hartford Allen, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency in excess profits tax of this petitioner for the short taxable period from January 1 to June 30, 1941. The petition was filed in accordance with

law after the receipt of the statutory notice of the determination of that deficiency. Secs. 272 (a) (1) and 729. The Commissioner now concedes that there is no deficiency. The only issue for decision is whether the petitioner has made an overpayment of $13,921.24 of its excess profits taxes for the period here in question and is entitled to a refund of that amount. The jurisdiction of the Tax Court to consider and decide that issue is not doubted by either party and there is no reason to question that jurisdiction. Sec. 322 (d).

The petitioner contends that it has made an overpayment and is entitled to a refund of $13,921.24, since its tax should be computed under section 711 (a) (3) (B). The respondent concedes that the payments already made exceed the petitioner's excess profits tax liability by $13,921.24 if the excess profits tax liability is to be computed under section 711 (a) (3) (B). The Commissioner contends, however, that the petitioner is not entitled to have its taxes computed under section 711 (a) (3) (B) and, in any event, is not entitled to have any portion of its payments refunded, since it did not make application to have its taxes computed under section 711 (a) (3) (B) on or before June 15, 1943. See Regulations 109, sec. 30.711 (a)-4 (d). The facts have been stipulated or admitted and are not in dispute.

The petitioner was a New Jersey corporation, with offices in Pittsburgh, Pennsylvania. It ceased to do business as of June 30, 1941, when it was merged with a Delaware corporation of the same name. The petitioner's excess profits tax return for the period of six months ended June 30, 1941, was filed on March 14, 1942, with the collector of internal revenue for the twenty-third district of Pennsylvania.

Section 711 (a) (3) (B) was added to the Internal Revenue Code by section 213 of the Revenue Act of 1942, approved October 21, 1942. It was made retroactive to taxable years of less than twelve months beginning after December 31, 1939. The general rule applicable to such periods is contained in section 711 (a) (3) (A). (B) provided an exception which would benefit the petitioner, as the parties have agreed, if it is entitled to have that paragraph applied. (B) contains the following sentences:

The benefits of this subparagraph shall not be allowed unless the taxpayer, at such time as regulations prescribed hereunder require, makes application therefor in accordance with such regulations, and such application, in case the return was filed without regard to this subparagraph, shall be considered a claim for credit or refund. The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary for the application of this subparagraph.

The Commissioner, acting pursuant to the authority contained in (B), promulgated section 30.711 (a)-4 (d) of Regulations 109 through the medium of T. D. 5253, approved March 27, 1943, and filed with the

division of the Federal Register on March 30, 1943. That new regulation contained the following provision:

The claim shall set forth the computation of the adjusted excess profits net income and the tax thereon for the 12-month period, and must be filed not later than June 15, 1943, or the time prescribed for filing the return for the first taxable year ending with or after the twelfth month after the beginning of the short taxable year, whichever date is later.

The facts in this case are such that the taxpayer was required by that regulation to file its application for the benefit of section 711 (a) (3) (B) not later than June 15, 1943. Cases cited by the petitioner not involving refunds are not in point. The original return of the petitioner was filed before (B) was enacted and no application for the benefits of that provision was made by or on behalf of the petitioner prior to September 4, 1945, at which time a protest was filed containing an application for the benefits of section 711 (a) (3) (B). That was more than two years and two months after the last day for making such an application, as fixed in the regulations. It was also more than two years and five months after the regulation was approved and published, and more than two years and ten months after the law was approved.

The petitioner first contends that it is entitled to the refund because its claim was timely under section 322 (b) (3) and it is not limited by the provision of Regulations 109, section 30.711 (a)–4 (*d*). Section 322 (b) (3) provides that the period within which a claim for credit or refund may be filed shall be six months longer than the period within which the Commissioner might make an assessment pursuant to any timely agreement between the parties extending the time for assessment. The taxpayer and the Commissioner entered into a timely agreement extending the time for assessment of excess profits taxes for the period here in controversy to include June 30, 1946. The protest claiming the benefits of section 711 (a) (3) (B) was filed on September 4, 1945, and a claim for refund on Form 843 was filed by the successor company on June 10, 1946. The Commissioner correctly argues, however, that the provision of section 711 (a) (3) (B) (implemented by Regulations 109, sec. 30.711 (a)–4 (*d*), having the force and effect of law, *Maryland Casualty Co.* v. *United States,* 251 U. S. 342), being a special provision of limitation applicable to refunds of excess profits taxes for a short taxable period such as the one involved herein, takes precedence over the general provision of section 322 (b) (3). *Ginsberg & Sons* v. *Popkin,* 285 U. S. 204; *Cohen Trust* v. *Commissioner,* 121 Fed. (2d) 689.

The petitioner argues in the alternative that the regulation relied upon by the Commissioner was unreasonable in allowing only two and one-half months after its promulgation for the filing of an appli-

cation involving a credit or refund and, therefore, was invalid. The petitioner points out that the regulation as amended by T. D. 5272, approved June 14, 1943, C. B. 1943, p. 690, allowed a much longer time in all other cases, as, for example, where the application would result only in the reduction of a deficiency not yet paid or in taxes assessed but not yet paid. The petitioner cites cases for the general proposition that an unreasonable regulation is invalid, but none relating to the period fixed by a regulation for the performance of some act. No case on that precise point has come to our attention.

The statute here in question expressly provided that a regulation be drafted to supply the necessary administrative details. The regulation in question was approved and promulgated pursuant to that authority. It has been suggested that a regulation expressly required by statute to supplement the provisions of the law will be adhered to unless clearly arbitrary. Mertons, Law of Federal Income Taxation, vol. 9, sec. 49.188, pp. 176, 177. Cf. *Eastman Kodak Co.* v. *United States*, 48 Fed. Supp. 357; *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. The petitioner would have us conclude that this regulation was unreasonable or arbitrary merely because it sets June 15, 1943, as the last date upon which application could be made for the benefits of section 711 (a) (3) (B) if the benefits were to be realized through a refund or credit.

If the Commissioner had set a limitation which was obviously impossible to meet, then his action might be said to be unreasonable or arbitrary and the regulation invalid. But the date of June 15, 1943, set by the regulation involved herein, was over seven months after the law was approved and two and one-half months after the regulation was first promulgated. The period thus set was not obviously impossible to meet, unreasonably short, or arbitrary. Two and one-half months is the same period which Congress itself set for the filing of returns after the close of each taxable period. The petitioner and others could have been anticipating some regulation from the time the law went into effect. The petitioner did nothing to claim the benefits of this new provision until September 1945, and it has given no reason for its failure to act sooner. Apparently, it has gotten itself into its present position by its own inaction rather than through the unreasonableness of the regulation. The circumstances of this case do not justify a holding that this regulation was invalid. Cf. *Helvering* v. *Wilshire Oil Co., supra.* It follows that this Court can go no further than to hold, as the parties have agreed, that there is no deficiency.

Reviewed by the Court.

*Decision of no deficiency will be entered.*

OPPER, *J.*, dissenting: It is at once apparent that situations might arise in which the only procedure open to a taxpayer who had paid his tax "without regard to this subparagraph" (B), and, because of its subsequent passage, had made an overpayment, would be to file a claim for refund, and, upon its rejection, to bring suit. Cf. Internal Revenue Code, sections 3772 and 272; see *George H. Fraser*, 6 B. T. A. 997, 1001. In such a case it may readily be granted that the statutory provision characterizing the application for relief as a "claim for credit or refund" and the respondent's short statute of limitations would come into play.

But the present petitioner is here, and the present proceeding is within our jurisdiction at all, not by reason of any overpayment or because or in spite of the existence or nonexistence of a claim for refund, but because respondent has determined against petitioner a deficiency in its tax. If there had been no such determination, we should have no province to enter the controversy, even in the face of an obvious overpayment. *Pioneer Parachute Co.*, 4 T. C. 27. But once the parties are properly before us, as they are here, we are required to dispose not only of the matters raised by the deficiency notice, but of other questions relating to the year and tax in controversy as well, *Gutterman, Strauss Co.*, 1 B. T. A. 243; and, more especially, if there appears to be an overpayment instead of the originally determined deficiency, to declare its existence and amount. Internal Revenue Code, sec. 322 (d); S. Rept. 558, 73d Cong., 2d sess., p. 44. Except in such unusual instances as processing tax and special relief proceedings under section 722, where our jurisdiction is expressly made to depend upon the denial of a claim for refund, see *American Coast Line, Inc.*, 6 T. C. 67; affd. (C. C. A., 2d Cir.), 159 Fed. (2d) 665, and except where necessary to toll the limitations imposed by section 322 (d), the failure to file a claim for refund is not fatal. *Lois E. Scott*, 2 T. C. 726. If it need not be done at all, it can scarcely be held to have been done too late.

It may well have been a recognition of this fundamental characteristic of Tax Court proceedings which accounts for respondent's conclusion that: "An application for the benefit of 711 (a) (3) (B) other than a claim for credit or refund [made in any case in which the tax liability has not been paid] may be filed at any time before the tax liability for the taxable year is finally determined."[1] The bracketed words, while making the provision inapplicable in terms to this proceeding, do not affect the evident distinction drawn by respondent him-

---

[1] "An application for the benefit of section 711 (a) (3) (B), other than a claim for credit or refund, made in any case in which the tax liability computed under section 711 (a) (3) (A) has not been paid, may be filed at any time before the tax liability for the taxable year is finally determined. Such application does not constitute a claim for credit, refund, or abatement. If credit or refund is sought for taxes paid after such application is filed, a claim therefor on Form 843 should be filed after such payment and within the period prescribed in section 322." (T. D. 5272, 1943 C. B. 690 (June 14, 1943).)

self between applications for relief which depend for their validity on claims for refund, and others, like the present, which do not.

Applying that distinction to the proceeding before us, it becomes evident that respondent's determination of a deficiency against this petitioner entitled it to file a petition here; and that the filing of that petition gave this Court jurisdiction. If in some other respect it developed that petitioner's tax liability on its original return was overstated, there could be a determination here to that effect, see *Peerless Woolen Mills*, 13 B. T. A. 1119, and, except in the unusual situations previously noted, no consideration whatever would be given to whether or not a claim for refund had been filed. I think we should reach the same conclusion with respect to the present overpayment, and, notwithstanding that any claim for refund may have been ineffectual because in default under the regulations, the conclusion that there was an overpayment, irrespective of any such claim for refund, should be permissible here as in any other proceeding. It would follow that there was an overpayment in petitioner's excess profits tax of which we might take cognizance under 711 (a) (3) (B).

Once that had been ascertained, it would become evident that the overpayment was made within the time permitted by section 322 (d), as amended, since the petitioner concededly filed consents to the extension of the period for consideration of its relevant tax return and the time specified in those consents has not yet expired. I accordingly dissent.

Harron, and Johnson, *JJ.*, agree with this dissent.