## Brock's Assigned Estate (No. 3).

Argued April 25, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Geoffrey S. Smith,* with him *Robert Dechert,* of *Dechert, Bok & Smith,* for appellants, in Nos. 199-203.—The word "such," preceding the definition of private bankers whose depositors are preferred, which appears in the last provision of section 1 of the Private Banking Act, was intended by the legislature to refer to the original definition at the beginning of section 1 covering all private bankers subject to the act: Com. v. Bilotta, 61 Pa. Superior Ct. 264; Com. v. Grossman, 23 Pa. Dist. Rep. 379.

The preference of depositors upon the insolvency of banking institutions is a policy of the law long established by prior acts.

The necessity for this protection is, if anything, greater in the case of unlicensed than of licensed bankers: Cameron's Case, 287 Pa. 560; Union League v. Ransley, 39 Pa. Superior Ct. 514.

*Ira Jewell Williams, Jr.*, with him *Ira Jewell Williams* and *Francis Shunk Brown*, for appellant, in No. 186.—The priority in question is clearly granted by the words of the act fairly construed: Com. v. Grossman, 248 Pa. 11; Com. v. Bilotta, 61 Pa. Superior Ct. 264.

Preference to depositors of bankers is the policy of Pennsylvania.

*George F. Baer Appel*, with him *Francis H. Bohlen, Jr., Saul, Ewing, Remick & Saul* and *Townsend, Elliott & Munson*, for appellees.—Appellants have the burden of proving their right to preference and priority.

In the absence of legislation preferring certain creditors in the assets of the general estate, no such preference exists: Prudential Trust Co.'s Assignment, 223 Pa. 409; Fox's App., 93 Pa. 406.

The Act of 1911 was passed to license and regulate private banking, and to protect the public from unscrupulous private bankers.

The history of preference to depositors indicates a careful extension by the legislature and a strict construction by the courts: Fox's App., 93 Pa. 406; Prudential Trust Co.'s Assignment, 223 Pa. 409.

The act upon which appellants base their claim does not support the strained construction placed upon it, but on the contrary indicates by its very language that the preference is extended only to depositors in licensed private banks and not indiscriminately to all private banks whether licensed or not.

Opinion by Mr. Justice Maxey, May 22, 1933:

The question before us is: Does the preference granted by the Act of April 5, 1927, P. L. 106, amending section

1 of the Private Banking Act of 1911, P. L. 1060, to depositors in insolvent duly licensed state banks also extend to depositors in banks operating without the license required by the Act of 1911? This latter act provides that, with certain exceptions (which need not be referred to here), "no individual, partnership, or unincorporated association shall hereafter engage, directly or indirectly, in the business of receiving deposits of money for safekeeping or for the purpose of transmission to another, or for any other purpose, without having first obtained from a board, consisting of the State Treasurer, the Secretary of the Commonwealth, the Commissioner of Banking,......a license to engage in such business."

In October, 1913, George K. Reilly and Sidney F. T. Brock entered into a partnership under the name of Reilly, Brock & Company to engage in the investment banking and brokerage business. They also carried on a deposit banking business. They did not comply with any of the provisions of the Act of 1911 and did not obtain the license required. Charles A. Reilly, a brother of one of the partners herein, opened an account with the partnership in 1913 which account was active during the partnership's entire existence. From 1913 to 1925 the bank accepted deposits, using the word "bankers" on their stationery, etc. After that date they ceased to use the word "bankers" although they continued to do a banking business.

In 1928 five corporations, all appellants herein, i. e., Central Properties Company, The Chancellor Company, Burlington Arcade Company, North American Building Corporation and Corporation Real Estate Company, opened deposit accounts with the partnership. These accounts remained active during the existence of the firm.

Reilly, Brock & Company owned 69,325 of the 315,000 shares of stock of the Central Properties Company. This firm owned all of the common stock of the other

four corporations above mentioned. The banking partners were two of the eight directors of Central Properties Company; two of the six directors of the Burlington Arcade Company; two of the firm's employees were directors of the North American Building Corporation and of the Corporation Real Estate Company. Sidney F. T. Brock was treasurer and two employees were respectively vice-president and assistant treasurer of the Central Properties Company.

On October 24, 1930, Sidney F. T. Brock, sole surviving partner, executed a deed of assignment for the benefit of the creditors of the firm. On that date the firm had thirty-eight active deposit accounts and ten inactive accounts. Of the active accounts ten were those of members of the family of the partners; nine were accounts of personal servants or employees of the firm; and twelve were accounts of corporations or organizations with which either members or employees of the firm were associated. At the time of the assignment the six appellants had on deposit to their credit the following amounts:

| | | |
|---|---|---|
| The Chancellor Company | | $16,363.64 |
| Burlington Arcade Company | | 14,539.32 |
| North American Building Corporation | | 33,134.87 |
| Corporation Real Estate Company: | | |
| Regular Account | $18,676.79 | |
| "The Wellington" Account | 16,888.60 | |
| | | 35,565.39 |
| Central Properties Company | | 162,864.45 |
| Charles A. Reilly | | 11,597.67 |

On or about May 22, 1931, J. Willison Smith, as Receiver of the following companies: The Chancellor Company, Burlington Arcade Company, North American Building Corporation, Corporation Real Estate Company, and Central Properties Company, filed with the assignees, C. S. W. Packard and C. S. Newhall, proofs of claim against Reilly, Brock & Company for the amounts set forth. At the same time Charles A. Reilly

filed his individual proof of claim for $11,597.67. These sums were claimed not only to share in the distribution of the general assets, but also to have priority over general creditors in the distribution, under the Banking Act of 1911 as amended in 1927.

On November 25, 1931, the assignees filed their first account and petition for distribution. They denied preference to the claims presented by J. Willison Smith, Receiver. Exceptions were subsequently filed and these were dismissed in the adjudication of the court below. Exceptions to this adjudication were filed by the Receiver of the five above named companies. The claim of Charles A. Reilly for a preference was likewise denied by the assignees and by the court below.

The question before us depends upon the interpretation of the adjective "such," being the eighth word in the amendment of April 5, 1927, which reads as follows: "In case of the insolvency of any such individual, partnership, or unincorporated association, acting as a private banker, the distribution of the money, funds, property, and assets (other than the proceeds from the said bond or securities deposited) of the individual, partnership, or unincorporated association, shall be made and preferred in the following order: First, To the payment of all depositors of the individual, partnership, or unincorporated association, whether the deposits be subject to immediate check, or only payable after specified notice, or at the expiration of a fixed period, whether or not such notice has been given or such period expired at the time of distribution."

"Such" is defined in Webster's New International Dictionary as meaning "of that kind," and also as "having the particular quality or character specified." "Such" as applied to an "individual, partnership," etc., must be interpreted to mean the kind of individual or partnership most recently referred to in the context.

A careful reading of section 1 of the Act of 1911, P. L. 1060, with its amendment of 1927, P. L. 106, leaves one

in no doubt concerning to whom and what *"such"* refers. This section, while not actually divided by the legislature, logically and grammatically *invites* division into four subsections. The first subsection emphatically says: *"No* individual, partnership, or unincorporated association shall hereafter engage directly or indirectly, in the" banking business without first obtaining a license to do so. Second, the next subsection prescribes what an "applicant" for a license must do and declares that "the board may, in its discretion, approve or disapprove the application." The word "applicant" is mentioned in this subsection at least fifteen times. The third subsection proceeds on the theory that the application has been granted and the applicant has then become a "licensee." This latter word appears in the third subsection at least six times, and the word "license" appears many more times, and once the following sentence is used in the third subsection: "It shall be unlawful for any person or partnership or unincorporated association holding such license certificate," etc. The fourth subsection includes the last part of section 1 of the Act of 1911 plus the amendment of 1927, which deals with the question of preference accorded to depositors. That part which was in the original Act of 1911 and is still retained, provides that "the money and securities deposited with the Commissioner of Banking" by the licensee "and the money which in case of default shall be paid on the" licensee's bond "by any applicant or the surety thereof, shall constitute a trust fund for the benefit of the depositors of the licensee," etc., "and such beneficiaries shall be entitled to an absolute preference as to such moneys or securities over all general creditors of the licensee." It is then immediately provided that in the event of the insolvency or bankruptcy of the licensee, "such moneys and securities shall be delivered by the Commissioner of Banking, on the order or judgment of a court of competent jurisdiction, to the assignee, receiver, or trustee of the licensee designated in

such order or judgment." In the very next sentence (this being the first part of the amending Act of 1927), it is provided that "in case of the insolvency of any such individual, partnership," etc., the depositors shall be given a preference, etc.

"Such" i. e., "that kind" of individual, partnership, etc., as used in that sentence can mean only the individual, etc., who has been duly licensed as a private banker. If the word "such" does not mean that, it has no place or purpose whatever in the act. If the sentence quoted means what appellants contend it means, the word "such" is entirely superfluous and should be deleted so that the sentence would read: "In case of the insolvency of *any* individual," etc., "acting as a private banker," etc. For us to delete a word from an act so as to give it a different meaning is for us to engage in legislation. The "applicant" mentioned in subsection 2 has been transformed into a "licensed banker" in subsection 3. Section 1 of the Act of 1927 is therefore concerned only with "such [i. e., a duly licensed] individual, partnership, or unincorporated association." It has no interest whatever in anyone who engages in the banking business without having been duly licensed. The amending Act of *1927*, which relates only to section 1 of the Act of 1911, makes no reference whatever to any individual, partnership, etc., who or which engages in the banking business *without* a license. *Section 1* of the Act of *1911* makes no reference whatever to an unlicensed banker except to "outlaw" him in the first ten lines of the act. When the Act of 1911 next refers to an unlicensed banker it is in section *3*, where he is given the status of a misdemeanant and his punishment provided for.

To interpret, as appellants would have us do, the phrase "such individual, partnership," etc., as meaning any individual, or partnership, etc., who or which engages in the business of banking whether licensed *or* *un*licensed, is to affront both grammar and public policy.

"A purpose to disregard sound public policy must not be attributed to the law-making power, except upon the most cogent evidence": 25 R. C. L. page 1041, section 272, 5 L. R. A. 340. "That construction [is] favored which will render every word operative rather than one which makes some words idle and negative": 25 R. C. L., page 1008, section 247; Com. v. Duane, 1 Bin. 601.

Unless the language of the Act of 1927 clearly demands it, the judiciary will not interpret it as giving to depositors in private banks which operate in defiance of a legislative mandate, the preference accorded to depositors in banks duly licensed by the Commonwealth, after the most careful scrutiny of the applicant's assets and liabilities, his citizenship in Pennsylvania, and after the applicant has filed a bond with adequate surety or sureties, or, in lieu thereof, has deposited money or government bonds or other approved securities. Such an interpretation would encourage the very practice the law condemns by relieving "outlaw" bankers of the necessity of making application, filing a bond and depositing securities, and would thereby accord bankers who flout and evade the law a preference over those who respect it and abide by it. Any interpretation of the Act of 1927 that leads to such an anomalous result would have to be based on equally anomalous grammar.

The presence of the parenthetical phrase "other than the proceeds from the said bond or securities deposited" in the section under interpretation leaves—if doubt had not already been excluded by a perusal of the act—not the slightest room for uncertainty as to the meaning of the adjective "such" in the amendment of 1927. The *only* bond or securities deposited would be those of *a duly licensed* banker, for the filing of an approved bond or the deposit of approved securities are prerequisites to the granting of a banker's license.

The decree is affirmed; costs to be paid by the appellant in case No. 186, January Term, 1933, and by the appellants in cases Nos. 199 to 203, inclusive, January Term, 1933.