Reed's Estate.

Argued March 25, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Henry A. MacDonald,* with him *A. Grant Walker* and *Gunnison, Fish, Gifford & Chapin,* for appellants, Nos. 73 and 74.

*John B. Brooks,* of *Brooks, Curtze & Silin,* for appellant, No. 94, and appellees, Nos. 73 and 74.

*Henry R. Jeffs,* for appellees.

OPINION BY MR. JUSTICE LINN, April 14, 1941:

The question in numbers 73 and 74 is what testatrix intended by the words "such child" as used in paragraph (6) of the residuary article of her will. She was survived by two sons, Lloyd G. Reed and Charles M. Reed. She gave the residue in trust to pay, out of income, $8,000 per annum "to my son, Lloyd G. Reed" for life,[1] and, if sufficient, to pay $8,000 per annum "to my son, Charles M. Reed" for life, and to divide the rest of the income, if in excess of $16,000, "between my said sons" for life; on the death of Lloyd, to pay his share of the income "to his children" until the youngest reached 21, then to pay that portion of the corpus producing Lloyd's income "to his said children." Clauses (5) and (6) then provide:

"(5) From and after the death of my son, Charles M. Reed, I direct that the income to which he shall be entitled under this, my will, for and during his natural life, to the extent of Two thousand ($2,000.00) dollars shall be paid over by my said trustees equally to my two grandsons Harrison Reed and Carl M. Reed, [sons of Charles M. Reed] for and during the term of their natural lives, and that all of said income to which the

---

[1] This provision was considered in *Reed's Estate,* 236 Pa. 572, 578, 85 A. 15.

said Charles M. Reed shall be entitled for and during his lifetime, in excess of said two thousand dollars, shall be paid over to my grandson Carl M. Reed, for and during his natural life.

"(6) And when any such grandchild shall die, then the principal of the fund producing said income to which such deceased grandchild was entitled, when living, shall be paid, assigned and conveyed by my said Trustees to such person or persons as such child by his last will and testament may appoint, or in the absence of such appointment then to the heir or heirs at law of such child; but in case my said son, Charles M. Reed, shall die, leaving no child or grandchild surviving him, then and in that case, I direct that the income to which the said Charles M. Reed is entitled during his life, shall be paid to my son, Lloyd G. Reed, if he shall survive the said Charles M. Reed, for and during his life, and from and after the death of the said Lloyd G. Reed, the said income shall be paid in equal shares to any child or children which the said Lloyd G. Reed may leave surviving him in the same manner as hereinbefore provided and directed in relation to the share of my estate to which the said Lloyd G. Reed is entitled to the income."

It will be noted that the words "such child" appear in the fifth line and again in the eighth line of paragraph (6). Appellants contend that by "such child" testatrix meant her son Charles M. Reed, to whom she had referred by name in paragraph (5) and to whom she also refers several times later in paragraph (6) as "my said son," or as "said Charles M. Reed." Appellees contend that she meant one or both of her named grandchildren, sons of Charles M. Reed, a conclusion adopted by the learned court.

When testatrix used the expression "such child," whose child did she mean, her own, or Charles M. Reed's? It is of course true that the words "child" and "grandchild" have not the same primary meaning and

will not be construed as referring to the same person unless the intention is clear *(Horwitz v. Norris,* 49 Pa. 213; *Harrison's Estate,* 18 Pa. Superior Ct. 588), but these authorities are of no assistance in this case.

After creating the life estates for her sons, Lloyd and Charles, she reached the point, in disposing of her property, where she considered it necessary to provide for her son's children, and in paragraph (5) she provided for them. He left two children, Harrison and Carl, whom she had described in paragraph (5), by name, as her two grandsons, and, it may be noted, she made a larger provision for Carl than for Harrison. Having provided that her son's life estate should be followed by life estates for his children, she next provided what should be done with her property on the death of a grandson. This she did in paragraph (6) which she began without repeating their names and referred to them by the descriptive term "any such grandchild," creating, in each, a power to appoint the share of the principal of which he had received the income; instead of repeating the phrase "any such grandchild" to describe the donee of the power, she shortened it into "such child" which again is a phrase descriptive of the person to whom she intended to refer. The grandsons mentioned in paragraph (5) were not to receive income until after the death of her son Charles; the power of appointment created in the first part of paragraph (6) could only be executed by "any such grandchild" if the child survived its father, and for that reason, in creating the power, she provided that "in the absence of such appointment," that is, by any such grandchild, then the property should pass "to the heir or heirs at law of such child," undoubtedly intending to refer to either or both grandsons previously named. This interpretation finds further support in the next provision in paragraph (6) which deals with the contingency of the death of "my said son, Charles M. Reed, . . . leaving no child or grandchild surviving him."

It is unnecessary to discuss possible meanings of the word "such"[2] or to consider the suggestion that it was intended to be synonymous with "said," an incorrect use of the word. We have no doubt whatever that it was used in the sense given in the dictionaries as meaning "of that kind; of the like kind . . . ." that is, such child—a child of the kind immediately referred to— "any such grandchild," and that the donee of the power was intended to be one of the grandchildren to whom she had given a life estate. She never referred to her son, Charles M. Reed, as "child" or "such child" or even "such son" anywhere in the residuary article. When she referred to her own children, Lloyd or Charles, she used expressions such as "my son, Lloyd G. Reed," "my son, Charles M. Reed"; several times she used the expression "said Charles M. Reed." To refer "such child" in paragraph (6) to Charles M. Reed in paragraph (5), as appellants contend, would in effect change the words "such child" into the words "said son," because in paragraph (5) she referred not to both her sons but only to one of them, Charles; such a substitution the court may not make.

At number 94 another question is presented. The testatrix, Harriet W. Reed, died in 1901. Her son, Charles, died in 1917. Her grandson, Carl, died in 1940, leaving a will executing the power of appointment created in the 6th paragraph of the residuary article. He left a will in which he created a trust of the residue of his own property and also of that over which he had the power to appoint under his grandmother's will; "I direct my said trustees to pay, for and during the lifetime of my wife, Lena W. Reed, the income of said trust estate . . . as follows, to wit: Fifty per cent (50%) thereof to my wife, Lena W. Reed; thirty per

---

[2] Compare *Carroll v. Burns,* 108 Pa. 386; *Phila. v. River Front R. Co.,* 133 Pa. 134, 19 A. 356; *Brock's Assigned Estate (No. 3),* 312 Pa. 92, 166 A. 785.

cent (30%) thereof to my son, Charles M. Reed; and twenty per cent (20%) thereof to my daughter, Virginia Ransom (formerly Virginia Hardwick); said payments of income to be made quarterly-annually to each of said beneficiaries. If either my said son or my daughter, or both, shall pre-decease my wife, then I direct that the share of income which would have been paid to such child if living, shall be paid to my wife for and during the term of her lifetime." The will contains further provisions to create future interests.

After Carl's death, the trustees of the estate of Harriet filed their 19th account. On exceptions, Carl's widow, Lena W. Reed, contended that her husband's will violated the rule against perpetuities and that distribution should now be made to her and his heirs in default of valid appointment. It was argued that one of the remainders is, in any view, void for remoteness, and that other future estates are likewise void unless Lena W. Reed can be considered the life in being. She must be so considered; though not then married to Carl Reed, she was living at the time of the death of the testatrix: see *Warren's Estate*, 320 Pa. 112, 114, 182 A. 396; *Minot v. Paine*, 230 Mass. 514, 120 N. E. 167 (1918). In any event, the vested life estates for Lena W. Reed and her two children are valid; the trusts are active and must therefore be supported for their benefit. Whether provisions intended to benefit parties at the termination of these life estates are valid or not must be determined at the end of the life estates. There is no merit in appellant's contention that the various trust provisions constituted such an integrated plan that testator could not have intended some of the provisions to remain if others failed. See *McCreary's Trust Estate*, 328 Pa. 513, 196 A. 25; *Quigley's Estate*, 329 Pa. 281, 198 A. 85; *Wanamaker's Estate*, 335 Pa. 241, 6 A. 2d 852; *Uch's Estate*, 338 Pa. 396, 12 A. 2d 905.

In each appeal the decree is affirmed, costs to be paid out of principal.