108 Cal.App.3d 591 (1980)
166 Cal. Rptr. 628
Estate of MADOLYN J. STOBER, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
LOUISE JARECKI DIETER et al., Objectors and Respondents.
Docket No. 18997.
Court of Appeals of California, Fourth District, Division One.
July 25, 1980.
*593 COUNSEL
Myron Siedorf, Margaret Groscup, James R. Birnberg and Phyllis K. Fairbanks for Petitioner and Appellant.
Haskins, Nugent, Newnham, Kane & Zvetina, Stephen L. Newnham and Cheryl M. Ruffier for Objectors and Respondents.
*594 OPINION
STANIFORTH, J.
Kenneth Cory, State Controller (Cory), appeals from an order of the superior court fixing inheritance tax at $177.83 in the estate of Madolyn J. Stober, deceased (Madolyn). The trial court sustained objections to the report of the inheritance tax referee which had fixed a tax liability of $79,937.58 by virtue of a power of appointment created by the testamentary trust of Carl A. Jarecki (testator).

FACTS
By will dated November 6, 1935, testator Jarecki established the testamentary trust, naming his wife Madolyn Jarecki (Stober) as one of the cotrustees. By the terms of the trust, Madolyn for the duration of her life was the sole income beneficiary. Upon Madolyn's death, the trust income was to be distributed in equal shares to their two daughters, Louise Jarecki Dieter and Carla Jarecki Dale (petitioners). Testator Jarecki died April 3, 1941, a Pennsylvania resident; Madolyn died April 21, 1974, a resident of San Diego, California.
Paragraph second, subdivision 3 of the will instructed: "The Trustees are further authorized to pay from the corpus of this Trust such sums as may, in the discretion of the Trustees, be required to defray the expenses resulting from the illness of any beneficiary hereunder or of such other emergencies as the Trustees shall deem sufficient to warrant such payment." (Italics added.)
At Madolyn's death, this power remained unexercised. Cory interpreted this trust provision to vest Madolyn with a taxable general power of appointment. Testator's daughters contested the finding, petitioned the superior court to determine inheritance tax. (Rev. & Tax. Code, § 14551.) The matter was submitted to the superior court after the inheritance tax referee reported the trust as a taxable transfer to Jarecki's daughters. By stipulation a copy of the Jarecki will was admitted as the only evidence.
The trial court concluded the assets of the Jarecki testamentary trust were not taxable in the estate of decedent Madolyn J. Stober based upon the following rationale: "3. Madolyn J. Stober, Louise Jarecki Dieter, and Carla Jarecki Dale were the primary objects of Carl *595 Jarecki's bounty, and he was concerned with the welfare of his daughters co-equally with that of his wife.
"4. Carl Jarecki named an independent cotrustee to guard against unbridled invasions by his wife, Madolyn J. Stober.
"5. The term `such other emergencies' in Paragraph 3 of Carl Jarecki's will requires a consideration of the rule of ejusdem generis.
"6. The power of invasion in the Carl Jarecki will should be interpreted as to its substantive effect pursuant to Pennsylvania law prior to a determination as to whether said power is taxable under California law.
"7. A Pennsylvania court applying Pennsylvania law would conclude the power of invasion was a restricted power subject to an ascertainable standard."
Cory contends the power of appointment under scrutiny is a general power to consume the corpus of the trust, therefore taxable in Madolyn's estate. Petitioners assert the power to consume is restricted, limited by the language of the trust document and testator's intent and therefore not to be deemed a general power of appointment by virtue of Revenue and Taxation Code section 13692, subdivision (a), which excepts from "general powers" "[a] power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent." Petitioners also assert assuming a general power of appointment was created by the trust instrument, yet they, the daughters, are not liable for the tax as they are "mere life income beneficiaries."

DISCUSSION
No extrinsic evidence was introduced to assist the trial court, therefore, the interpretation of the Jarecki will is an appellate judicial function to be undertaken independently by this court. (Estate of Logan (1978) 84 Cal. App.3d 717, 722 [148 Cal. Rptr. 819].)
(1a) The critical question presented is whether the power of invasion created in paragraph Second, subdivision 3 of the Jarecki will is "an ascertainable standard relating to ... health, education, support, or *596 maintenance...." (Rev. & Tax. Code, § 13692, subd. (a).) If so, Madolyn was vested with only a limited power of appointment and the trust corpus not taxable in her estate. Furthermore, "[w]hether a given formulation [par. Second, subd. 3] constitutes an ascertainable standard, however, depends upon the effect given by state law to the language." (Estate of Nunn (1974) 10 Cal.3d 799, 806 [112 Cal. Rptr. 199, 518 P.2d 1151].)
(2) Thus the rights afforded under a testamentary trust are to be determined by applying the law of the domicile of the decedent whose will created the trust. The Jarecki trust was established in a Pennsylvania probate proceeding. Thus the initial interpretation of the trust must be made pursuant to Pennsylvania law. (Estate of Newton (1950) 35 Cal.2d 830 [221 P.2d 952, 19 A.L.R.2d 1399]; Estate of Johnson (1965) 233 Cal. App.2d 785 [43 Cal. Rptr. 913]; In re O'Reilly's Estate (1952) 371 Pa. 349 [89 A.2d 513].) However, once the existence of the particular rights and benefits are established, the tax implications are no longer governed by state property law connotations or nomenclature. The taxation of the rights and benefits is determined under the law of the state of domicile at death of the donee of the power. (Estate of Newton, supra, 35 Cal.2d 830.)
In short, the nature of Madolyn's interest in the Pennsylvania testator's testamentary trust must be determined under Pennsylvania law, before the taxability of that interest will be determined under California law. (Morgan v. Commissioner of Internal Revenue (1940) 309 U.S. 78 [84 L.Ed. 585, 60 S.Ct. 424]; Miller v. United States (3d Cir.1968) 387 F.2d 866, 868; Estate of Nunn, supra, 10 Cal.3d 799, 806.)
The reality that governs this search is the language of the grant, the words chosen by the testator. (3) In fulfilling this task to determine "the breadth of the power," it is of no consequence that the power was not exercised or sought to be exercised. The grant of the power by the will is the test of taxability. Whether the power lay dormant or was exercised is not controlling. (Strite v. McGinnes (E.D.Pa. 1963) 215 F. Supp. 513, 515-516; Helvering v. Evans (3d Cir.1942) 126 F.2d 270, 272, 273, cert. den. 317 U.S. 638 [87 L.Ed. 514, 63 S.Ct. 30].)
(4) What testator Jarecki intended by the use of the words "illness of any beneficiary hereunder or of such other emergencies as the Trustees shall deem sufficient to warrant such payment" is to be determined *597 consistent with the testator's intention "discovered from a consideration of all the language in the four corners of the instrument, giving the words he employs their plain and ordinary meaning, except where the context in which they are used renders them a different denotation, or where legal or technical words are used and it is clear from their use that the legal or technical meaning was intended." (Strite v. McGinnes (3d Cir.1964) 330 F.2d 234, 239.)
Conformable to these fundamental rules we must turn to Pennsylvania law in search of the meaning of the words used in Jarecki's Pennsylvania will.
The Pennsylvania Supreme Court in Scaccia v. Borough of Old Forge (1953) 373 Pa. 161 [94 A.2d 563, 564], defined "emergency" as a generalization, a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate and quick action. (Accord Los Angeles Dredging Co. v. Long Beach (1930) 210 Cal. 348 [291 P. 839, 71 A.L.R. 161]; Black's Law Dict. (4th ed. 1957) p. 615.)
And in the case of In re Dobbin's Estate (1942) 148 Pa.Super. 177 [24 A.2d 641, 643], the court construed the word "emergency" in the following trust context: "`Notwithstanding the Trusts hereinabove declared for my daughter Isabel Dobbin, I direct that she shall have the right at any time in the event of an emergency to withdraw a sum or sums from the principal....'" The court held: "In the construction of a will, every intendment is to be made in favor of the heirs or next of kin. [Citation.] The `emergency' which gives the daughter the right to withdraw, is not qualified or restricted in the will to an emergency of any particular character or kind. The language is general, and the provision is operative in any pressing situation, personal to the donee, which the payment of money will relieve." (Ibid.)
The Pennsylvania court authorized an invasion of the corpus to obtain funds to save a beneficiary's real estate investment from foreclosure.
And in In re Estate of Gangwisch (1973) 454 Pa. 476 [311 A.2d 925, 926], the court construed the following provision in the Gangwisch will: "`In addition, the Trustees may expend so much of the income and/or principal of the trust estate as they shall believe necessary or advisable *598 to meet any emergency or unusual condition confronting my said daughter, ...'"
The operative words in the Gangwisch will are concededly broad. They were construed by the court as to entitle the life tenants "to so much principal as they needed in addition to the income from the trust." (Id., at p. 927.)
Thus under Pennsylvania law the concept of "emergency" if unmodified is operative and applies in any pressing situation personal to the donee which the payment of money will relieve and thus it is not an ascertainable standard limited to health, education, maintenance or support (accord IRS Letter Ruling No. 78-41006; Rev. Rule, 70-450; 2 CB 1970 p. 195).
These cases and authorities assist in ascertaining the meaning of testator Jarecki's words only in a negative sense, for given the broad generic meaning of "emergency," then its use in a totally unqualified manner as in Dobbin's Estate, supra, 24 A.2d 641, or in conjunction with the word any as in Gangwisch Estate, supra, 311 A.2d 925, authorizes without strain an interpretation favoring invasion, consumption of the trust by the beneficiaries whenever an emergency of any class or kind arises; therefore a general power to invade, a taxable power, was created.
The trust language in the case subjudice, in marked contrast, limits any invasion to a specific class of emergencies, to wit, "illness of any beneficiary hereunder" unless the words immediately juxtaposed and following enlarge that power, make it not subject to an ascertainable standard. The positioning of the "illness" and "or of such other emergencies as the Trustees deem sufficient to warrant such payment" compels this conclusion: the term "illness" is modified, limited by those following quoted words. (5) "Such" means of that kind, having particular quality or character specified. (In re Brock (1933) 312 Pa. 92 [166 A. 785, 787].)
In In re Reed's Estate (1941) 342 Pa. 54 [19 A.2d 365, 367], the Pennsylvania Supreme Court held "such" means "`of that kind; of the like kind ...' that is, such child  a child of the kind immediately referred to...."
*599 Thus the word "such" is descriptive and restricts the general term "emergency" to the class of expenditure just pointed out, to wit, "illness." "Such" means the same as that previously mentioned or specified. (Accord Evans v. State (1898) 150 Ind. 651 [50 N.E. 820]; United States v. Pittman (5th Cir.1945) 151 F.2d 851, 852; Borough of Highlands v. Davis (1973) 124 N.J. Super. 217 [305 A.2d 814, 821]; Black's Law Dict., supra, p. 1600.)
(6) While the word "other" may have the meaning of "different" or distinct from that already mentioned, yet when it follows an enumeration of a particular class, "other" must be read as "other such like" and includes only others of like, kind or character.
(7) This rule of ejusdem generis is a rule of construction and should be applied with caution (Miller v. United States, supra, 387 F.2d 866, 869), yet in the context here, "other" can have no other rational meaning than "other such like" and to things not greatly different from that specifically enumerated. The conjunction of the words "such" and "other" leave no doubt but that the doctrine of ejusdem generis was correctly applied by the trial court.
While a narrow, myopic focusing on individual words in the grant is not to be substituted for an examination of the words in context and a "four corners" examination of the entire document, yet here an examination into the generally understood meaning of the words used by the testator harmonizes with, confirms the broader indications of Jarecki's intent to be found in his will.
(8) Preference is to be given to a construction favoring the natural objects of the testator's bounty. (In re Dobbin's Estate, supra, 24 A.2d 641, 645; Miller v. United States, supra, 387 F.2d 866, 868.) The meaning we attribute to the precise words of the grant would give effect to the testator's manifest intent to protect all the objects of his bounty  his wife and his two daughters coequally. Each was clearly intended to be lifetime income beneficiaries. An untramelled right to consume the corpus in Madolyn could effectively destroy the successor beneficiaries' right to lifetime income and thus thwart Jarecki's clearly expressed intent. The required approval by a cotrustee to authorize any invasion of the corpus buttresses this conclusion.
Thus the trustee's discretion and authority "to deem [an emergency] sufficient" and thereupon invade the corpus is limited to a narrow limited *600 class, the one just referred, to wit, an emergency involving illness, adjudged, determined by the two trustees to be of such moment or import (Commonwealth v. Brue (1925) 284 Pa. 294 [131 A. 367, 368]; Breinig v. North Penn School District (1975) 19 Pa. Commw. Ct. 377 [339 A.2d 617, 620]), as to warrant this invasion.
(1b) The foregoing reasons compel this conclusion: Madolyn's power to invade and consume the trust properties for "such other emergencies as the Trustees shall deem sufficient to warrant such payment" is not a general power but a limited one and specifically limited to "an ascertainable standard relating to ... health" (Rev. & Tax. Code, § 13692, subd. (a)), to wit, illness. The trust assets are not taxable in Madolyn's estate.[1]
Judgment affirmed.
Brown (Gerald), P.J., and Hamrick, J.,[*] concurred.
A petition for a rehearing was denied August 12, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 17, 1980.
NOTES
[1] In view of this conclusion, we do not address petitioners' alternate contention of nonliability as "mere life income beneficiaries."
[*] Assigned by the Chairperson of the Judicial Council.