ESTATE OF JOHN RUSSELL LITTLE, DECEASED, CROCKER
NATIONAL BANK, EXECUTOR, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 34590-83.          Filed September 11, 1986.

*Neil F. Horton*, for the petitioner.
*William E. Bonano*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined a deficiency of
$191,087 in the Federal estate tax of the Estate of John
Russell Little. The only issue is whether the value of assets
of a trust of which John Russell Little was a beneficiary
and the sole trustee is includable in his estate under section
2041.[1]

This case has been submitted under Rule 122. All of the
facts have been stipulated and are found accordingly.[2]

Petitioner Crocker National Bank is the executor of the
Estate of John Russell Little. Petitioner's principal office
was located in San Francisco, California, when the petition
herein was filed. The Federal estate tax return here involved
was filed with the District Director of Internal Revenue,
San Francisco, California.

John Russell Little (hereinafter sometimes referred to as
decedent) died on August 2, 1979. At the time of his death,

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect at
the time of decedent's death, unless otherwise indicated. All Rule references are to the Tax
Court Rules of Practice and Procedure.

[2]The stipulations and the exhibits attached thereto are incorporated herein by this reference.

he was a beneficiary and the sole trustee of a testamentary trust (hereinafter sometimes referred to as trust) created by the will of his wife, Grace Schaffer Little (hereinafter sometimes referred to as Mrs. Little), who died on November 11, 1971. The pertinent provisions of the trust are as follows:

> During the lifetime of John Russell Little, the trustee shall pay to or apply for the benefit of John Russell Little, so much of income and principal of the trust estate as is necessary, in the discretion of the Trustee after taking into consideration to the extent the Trustee deems advisable, other resources of John Russell Little available to him outside of this trust, for his proper support, maintenance, welfare, health and general happiness in the manner to which he is accustomed at the time of the death of Grace Schaffer Little.

Decedent's gross estate, as computed on his estate's Federal estate tax return, did not include the value of the trust's assets, which the parties agree was $539,088.01 at the time of decedent's death. Respondent determined an estate tax deficiency of $191,087 after including the value of the trust's assets in decedent's estate under section 2041.[3]

Under the three paragraphs of section 2041(a), the value of property is included in a decedent's gross estate in three distinct situations. Since we hold that the value of the trust's assets are included in decedent's gross estate under section 2041(a)(2), we do not consider whether a like result would obtain under section 2041(a)(1) or section 2041(a)(3).

Section 2041(a)(2) states in relevant part, "The value of the gross estate shall include the value of all property * * * [t]o the extent of any property with respect to which the decedent has at the time of his death a general power of appointment." Section 2041(b)(1) defines general power of appointment as a "power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." Section 2041(b)(1)(A) excepts powers which are "limited by an ascertainable standard relating to

---

[3]Because Mrs. Little died less than 10 years before decedent's death and the value of the trust's assets was included in her estate, upon including the value of the trust's assets in decedent's estate, respondent allowed it an increase in the sec. 2013 prior transfers credit. The $191,087 deficiency reflects this increase in the sec. 2013 prior transfers credit.

the health, education, support, or maintenance of the decedent."[4]

For the section 2041(b)(1)(A) exception to apply, the power of appointment must be limited to a standard that meets two requirements. The standard must be ascertainable and the standard must relate to the decedent's health, education, support, or maintenance. *Estate of Sowell v. Commissioner*, 74 T.C. 1001, 1003 (1980), revd. on other grounds 708 F.2d 1564 (10th Cir. 1983).

Unless the section 2041(b)(1)(A) exception applies, the power held by decedent as sole trustee of the trust to invade income and corpus for his benefit is clearly a general power of appointment. We therefore must determine if the standard of "proper support, maintenance, welfare, health, and general happiness in the manner to which [decedent] is accustomed at the time of the death of [Mrs. Little]" is an ascertainable standard relating solely to the health, education, support, or maintenance of decedent.[5]

We look to State law to determine whether the standard relates solely to the health, education, support, or maintenance of the decedent. See *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940); *De Oliveira v. United States*, 767 F.2d 1344, 1347 (9th Cir. 1985). Since Mrs. Little was a resident of California at the time of her death, California State law applies to the construction of the power held by decedent which was created by Mrs. Little's will. *De Oliveira v. United States, supra* at 1347; *Estate of Stober*, 108 Cal. App. 3d 591, 166 Cal. Rptr. 628 (1980).

Petitioner argues that a California State court construing the standard would "limit it to refer to the the standard of *support* which the decedent enjoyed at the time of his wife's death." (Emphasis added.) Petitioner refers to Cal. Civ. Code sec. 2269 and *In re Estate of Smith*, 117 Cal. App. 3d 511, 172 Cal. Rptr. 788 (1981). Petitioner suggests that we

---

[4]Sec. 2041(b)(1)(B) and (C) also are exceptions to the definition of general power of appointment. However, both apply to powers exercisable by a "decedent only in conjunction with another person" and, accordingly, are not here applicable as the decedent was the sole trustee of the trust.

[5]Although sec. 2041(b)(1)(A) does not contain the word "solely," the statute must be construed as if it contained that word. Failure to so interpret sec. 2041(b)(1)(A) would obviate words chosen by Congress. See *Matut v. Commissioner*, 86 T.C. 686 (1986); *Estate of Roy v. Commissioner*, 54 T.C. 1317, 1323 (1970).

consider the language of Cal. Civ. Code sec. 2269 (West 1985) as substantially amended subsequent to decedent's death. Since section 2041(a)(2) refers to powers held by decedent "at the time of his death," we consider the language of section 2269 of the California Civil Code as enacted in 1872 and in effect at the time of decedent's death.[6] This version of the statute does not support petitioner's contention.

*In re Estate of Smith*, 172 Cal. Rptr. at 790, in dicta, construed the following standard: "reasonable care, comfort, support and maintenance in accordance with the standard of living as of the date of [the trustor's] death." Relying heavily on the language "in accordance with the standard of living as of the date of [the trustor's] death" the court held that the standard was ascertainable.[7] Although the standard employed by the trust contains similar language, neither that language nor *In re Estate of Smith* supports petitioner's contention, as both are relevant only to whether the standard is ascertainable, an issue which we do not decide.[8] See note 12 *infra*.

Having rejected petitioner's contention, we now consider whether a California State court would interpret the standard employed by the trust to relate solely to the health, education, support, or maintenance of decedent. Our research of California State law, as aided by the parties, has not revealed any case directly on point. Therefore, we will

---

[6] Sec. 2269 of the California Civil Code, as enacted in 1872 and in effect at the time of decedent's death, which is reprinted in the Historical Note to Cal. Civ. Code sec. 2269 (West 1985), stated as follows:

"Discretionary powers. A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper Court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust."

[7] "A power to invade corpus to provide for a beneficiary's 'reasonable care, comfort, support and maintenance in accordance with the standard of living as of the date of decedent's death' creates a far more *ascertainable* standard than several approved in the regulation." *In re Estate of Smith*, 117 Cal. App. 3d 511, 172 Cal. Rptr. 788, 794 (1981). (Emphasis supplied.) This statement and, more importantly, the lack of others discussing health, education, support, or maintenance lead us to the conclusion that *In re Estate of Smith* decided only that the standard was ascertainable.

[8] We envision only one situation in which the language referred to would affect whether the standard related solely to decedent's health, education, support, or maintenance. It may have been that decedent enjoyed no "general happiness" or "welfare" at the time of Mrs. Little's death. In such a case, the terms "general happiness" and "welfare" can be read out of the will as they refer to nothing. Even if petitioner had made such an argument before this Court, it would lose, as it has not proven that decedent's "general happiness" and "welfare" were nonexistent at the time of Mrs. Little's death. See Rules 142(a), 122(b), and 149(b).

consider the general rule of construing testamentary trusts under California State law. "A trust created by will is properly controlled by the expressed intention of the testatrix [and] the particular language used is always important." *In re Miller's Estate*, 230 Cal. App. 2d 888, 41 Cal. Rptr. 410, 422 (1964). "A trustee must * * * follow all the directions of the trustor." Cal. Civ. Code sec. 2258 (West 1985).[9]

We are convinced that a California State court properly applying these general rules would recognize that the standard employed by the trust does not relate solely to the health, education, support, or maintenance of the decedent. "Were [it] confronted with a dispute between the widow[er] and the remaindermen over the propriety of an invasion, [it] would not adopt a grudging and narrow interpretation of [general happiness]."[10] *In re Estate of Nunn*, 112 Cal. Rptr. 199, 204, 518 P. 2d 1151 (1974) (using the quoted language to interpret "need"); *Estate of Allgeyer*, 60 Cal. App. 3d 169, 129 Cal. Rptr. 820, 823 (1976) (using the quoted language to interpret "comfort").

We are convinced that a California State court would recognize that there are items which fall within the ambit of "general happiness," but which do not fall within the ambit of "health, education, support, or maintenance." Consider, for example, "travel." The California State Supreme Court

---

[9]See also Cal. Prob. Code sec. 102 (West 1956), repealed for decedents dying after Dec. 31, 1984, 198 Cal. Stat. 842 and Cal. Prob. Code secs. 6103 and 6160 (West 1986 Supp.), which states in relevant part, "The words of a will are to receive an interpretation which will give to every expression some effect rather than one which will render any of the expressions inoperative."

[10]We, are aware that this Court has stated that a "word, such as 'happiness'" should be construed in the context in which it appears. *Estate of Ford v. Commissioner*, 53 T.C. 114, 126 (1969), affd. 450 F.2d 878 (2d Cir. 1971). We do not construe general happiness in isolation. However, the only language in the trust which limits the term is, "in the manner to which he is accustomed at the time of the death of [Mrs. Little]." We have already determined that this language, with one exception (see note 8 *supra*), relates only to whether the standard is ascertainable. Accordingly, we find no language in the trust which limits the term "general happiness" as it relates to our present discussion of whether the term is broader than health, education, support, or maintenance.

We do not find it necessary for the disposition of this case to construe "welfare." However, we note that "welfare" has, in the past, been construed to be broader than health, education, support, or maintenance. *Estate of Jones v. Commissioner*, 56 T.C. 35 (1971), affd. 474 F.2d 1338 (3d Cir. 1973) (construed under New Jersey State law); *Franz v. United States*, an unreported case (E.D. Ky. 1977, 39 AFTR 2d 1658, 77-1 USTC par. 13,182) (construed under Kentucky State law).

[11]The court does not refer to "health," but we readily note that "travel" often does not relate to the health of the traveler, the two being, for the most part, independent of one another.

has intimated that "travel" does not relate to "support, maintenance, or education."[11] *In re Estate of Nunn*, 112 Cal. Rptr. at 205. If it were necessary for decedent to travel to maintain the level of general happiness he enjoyed prior to his wife's death, he could invade the income and corpus of the trust to pay for such travel. Such an invasion is within the expressed intent of Mrs. Little: "the trustee shall pay to or apply for the benefit of [decedent], so much of income and principal * * * as is necessary * * * for his * * * general happiness in the manner to which he is accustomed at the time of the death of [Mrs. Little]." See *In re Miller's Estate, supra*; Cal. Civ. Code sec. 2258 (West 1985).

"Travel" is not the only example of a proper use of the assets of the trust that would not be proper if the power to invade was limited solely to decedent's health, education, support, or maintenance. A listing of other examples is not here necessary. That one exists is sufficient to show that the standard employed by the trust does not relate solely to decedent's health, education, support, or maintenance. Accordingly, we hold that the section 2041(b)(1)(A) exception to the definition of general power of appointment is not here applicable.[12]

Since none of the exceptions to general power of appointment apply,[13] we hold that decedent possessed, at the time of his death, a general power of appointment. The power of appointment was exercisable over the income and corpus of the trust. Respondent was therefore correct in including the value of the trust's assets in decedent's gross estate. Sec. 2041(a)(2).

> *Decision will be entered for the respondent.*

---

Further, we note, as we feel the California State Supreme Court would, that "travel" might, in some situations, relate to "support, maintenance, or education," though, for the most part, "travel" is independent of "support, maintenance, or education."

[12]We need not consider whether the standard is ascertainable as our holding that the standard is not related solely to the health, education, support, or maintenance of the decedent is dispositive of the applicability of sec. 2041(b)(1)(A).

In *Brantingham v. United States*, 631 F.2d 542 (7th Cir. 1980), the Court of Appeals for the Seventh Circuit held that a power to invade for decedent's "maintenance, comfort, and happiness" was, under Massachusetts State law, limited by an ascertainable standard. It further held that the sec. 2041(b)(1)(A) exception was applicable, although it did not address the issue determined in this opinion.

[13]See note 4 *supra*.